FOURTH DEPARTMENT, MAY, 1986

(May 23, 1986)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERWIN A. PARKS, Appellant.—Judgment reversed, on the law, defendant's motion to suppress granted, and new trial granted. Memorandum: The suppression court erred in failing to suppress two statements defendant made to police officers without the benefit of Miranda warnings. At the Huntley hearing, defendant testified that, as he stood on a street corner, he was approached by a police officer who frisked him and held him by the arm until at least three other officers arrived. He was held on either side by an officer, and one of the officers asked him where he was coming from and how much money he had. Defendant sought suppression of his answers to those questions.

Officer Lloyd, the only prosecution witness at the Huntley hearing, testified that he received a radio report that a cabdriver had been the victim of an armed robbery. He spotted defendant, who closely matched the radioed description of the robber, standing on the corner of Westmoreland and East Fayette. As he exited his police car, a cabdriver flashed the lights of his cab, got out of his cab, pointed to defendant and said, "[t]hat's the guy". Lloyd then approached defendant, frisked him and began to question him. He did not recall whether he held defendant as he questioned him, but stated that it was possible. He further stated: "I may have had a hold of him; I may not have at that time". He did not recall whether another police officer was holding defendant. Officer Lloyd did testify that, in his opinion, defendant was not free to leave, and had defendant tried to leave he would have been restrained.

The suppression court declined to find that defendant had been held during the questioning, but found that, even if defendant had been held, "it is clear that there was no significant attempt to restrain the defendant such as through the use of handcuffs or by drawing a service revolver to prevent his escape". We disagree, and conclude that the actions of the officers amounted to a significant restraint on defendant's freedom *(see, People v McKay,* 29 AD2d 834). The arresting officer admitted that defendant was not free to leave, and under these circumstances we find that a reasonable man, innocent of any crime, who was being restrained and questioned by one or two police officers, would believe he was in custody *(see, People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851). Therefore, the statements made by the defendant in response to the officer's questions without benefit of *Miranda* warnings should have been suppressed.

We cannot conclude that the introduction of the statements into evidence can be deemed harmless. Defendant testified at trial and introduced several witnesses in an attempt to establish an alibi defense. Defendant's conflicting statements to the officers at the time of his arrest were introduced in the People's case-in-chief and were also used in cross-examination to attack defendant's credibility. On summation, the prosecutor referred to the variance between defendant's statements at arrest and his trial testimony. On this record, it cannot be said that there was no reasonable possibility that the improperly admitted evidence contributed to defendant's conviction *(see, People v Crimmins,* 36 NY2d 230, 237).

We have reviewed defendant's claims of prosecutorial misconduct. While clear improprieties did occur, the errors were unpreserved and those instances, taken together, did not deprive defendant of his constitutional right to a fair trial (CPL 470.15 [6] [a]; *People v Crimmins,* 36 NY2d 230, 238, *supra).* The District Attorney is responsible, however, for insuring that his Trial Assistants avoid tactics that we have repeatedly condemned, such as asking the defendant if a prosecution witness was lying *(see, People v Grice,* 100 AD2d 419, 421; *People v Herlan,* 99 AD2d 647).

All concur, except Dillon, P. J., and Callahan, J., who dissent and vote to affirm in the following memorandum by Dillon, P. J.

Dillon, P. J. (dissenting). We vote to affirm. The two statements made by defendant to Police Officer Lloyd during this street encounter did not result from custodial interrogation

*(see, Miranda v Arizona,* 384 US 436), and thus suppression was properly denied. Beyond that, however, their introduction into evidence at defendant's trial was harmless beyond a reasonable doubt *(see, People v Crimmins,* 36 NY2d 230, 237).

At the *Huntley* hearing, Officer Lloyd testified that he received a radio transmission that a cabdriver had been the victim of an armed robbery and that the suspect was at the corner of East Fayette and Westmoreland; that upon his arrival at that location, he observed several taxicabs 20 to 30 yards from him and he saw defendant standing on the corner; that the headlights of one of the cabs flashed and the driver of that cab stepped out of his vehicle, pointed to defendant, and said "[t]hat's the guy"; that without any further communication with that cabdriver, he approached defendant and frisked him; that he asked defendant where he had been and that defendant responded "1809" or "1809 East Fayette", but that momentarily thereafter defendant said he was coming from a different place, the location of which Lloyd could not recall; that he asked defendant how much money he had and defendant said "between nine and twenty dollars"; that he could not recall whether he held defendant by the shoulder as he asked the two questions, but that at least the first question, if not both, was asked before any other police officers arrived at the scene; that after the questions were asked, the cabdriver who had previously pointed to defendant approached and identified himself as the victim and defendant as the person who robbed him; that thereafter, defendant was arrested and handcuffed.

Defendant's version of the confrontation was significantly different. He testified that Officer Lloyd did not question him but that Lloyd held him by the shoulder until three other police officers arrived; that he was then handcuffed, and as one of the other officers held him by the arm and Lloyd continued to hold him by the shoulder, he was questioned by a nonuniformed officer to whom he gave the answers as to where he was coming from and how much money he had. Defendant seeks suppression of those answers.

As we view the *Huntley* hearing testimony, the questioning of defendant can only be found to be custodial if we adopt defendant's version of the encounter. Obviously this was not done by the suppression court, and it should not be done at this level. As to the issue of custody, the suppression court concluded as follows: "In the instant case, the defendant was approached and questioned on a street corner. Although during the hearing Officer Lloyd stated that he did not recall

whether he was holding onto the defendant at the time he was making his inquiries, it is clear that there was no significant attempt to restrain the defendant".

We agree with that determination. Although we would not conclude on this record that Officer Lloyd held defendant by the shoulder as he questioned him, even if we were to do so, we would not find that defendant was under "significant restraint" *(see, Miranda v Arizona, 384 US 436, supra).* In *Miranda,* "the Supreme Court intended that the warnings be given when the questioning takes place under circumstances which are likely to affect substantially the individual's 'will to resist and compel him to speak where he would not otherwise do so freely.' " *(People v Rodney P., 21 NY2d 1, 11.)* At the same time, "[t]he test is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position [citations omitted]" *(People v Yukl, 25 NY2d 585, 589, cert denied 400 US 851).*

In the circumstances and atmosphere we see here, it cannot be said that during this brief investigatory interrogation defendant was deprived of his freedom in any significant way or that his responses were other than freely and voluntarily given *(see, Matter of Kwok T., 43 NY2d 213).*

After reviewing the trial record, we also conclude that the statements made by defendant played no role in the jury's determination. By no interpretation can they be considered as confessions of guilt or otherwise damaging admissions. Indeed, at trial defendant acknowledged that he had made the statements and gave rational explanations for having made them. Moreover, the evidence of his guilt was overwhelming. The cabdriver victim kept defendant in sight at all times from the moment of the robbery to the moment of his apprehension. Thus viewed, there is no reasonable possibility that the introduction of defendant's statements into evidence might have contributed to defendant's conviction, and if there was error in receiving the statements, it was harmless beyond a reasonable doubt *(see, People v Crimmins, 36 NY2d 230, 237, supra,* citing *Chapman v California, 386 US 18; Fahy v Connecticut, 375 US 85).* (Appeal from judgment of Supreme Court, Onondaga County, Gorman, J., at trial; Hurlbutt, J., on suppression hearing—robbery, first degree.) Present—Dillon, P. J., Callahan, Doerr, Green and Pine, JJ. (Order entered Apr. 10, 1986.)